**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 15-cv-01899-CMA-KMT

AMY CARNRICK,

      Plaintiff,

v.

RIEKES CONTAINER CORPORATION,
ROBERT RICHEY, both as Vice President of Sales of Riekes Container Corporation
and in his individual capacity,
BRETT ATLAS, both as Executive Vice President of Riekes Container Corporation and
in his individual capacity, and
CARL RIEKES, both as President of Riekes Container Corporation and in his individual
capacity.

      Defendants.

---

## ORDER ON MOTIONS

---

      On September 2, 2015, Plaintiff Amy Carnrick filed suit against Defendants

Riekes Container Corporation ("Riekes Corp."), Robert Richey, Brett Atlas, and Carl

Riekes for alleged violations of Title VII of the Civil Rights Act of 1964, the Texas Labor

Code, and the Nebraska Fair Employment Practice Act.  (Doc. # 1.)  In response to

Plaintiff's complaint, Defendants filed the following three motions, which are currently

pending before the Court: (1) Defendant Robert Richey's Motion to Dismiss for Lack of

Personal Jurisdiction (Doc. # 18); (2) Defendants Carl Riekes and Brett Atlas's Motion

to Dismiss for Lack of Personal Jurisdiction (Doc. # 20); and (3) Defendant Riekes

Corp.'s Motion to Transfer Venue to the United States District Court for the District of Nebraska (Doc. # 21).  For the foregoing reasons, all three motions are granted.

## I.      BACKGROUND

In February 2014, Plaintiff accepted a position as Regional Sales Manager with Defendant Riekes Corp., which is headquartered in Omaha, Nebraska.  (Doc. # 1 at ¶¶ 2, 47.)  The position required Plaintiff to relocate from Denver, Colorado to Austin, Texas.  (Doc. # 1 at ¶ 2.)  Plaintiff moved to Texas in April 2014.  (Doc. # 1 at ¶ 55.)  Defendant Richey was Riekes Corp.'s Vice President of Sales and Plaintiff's direct supervisor.  (Doc. # 1 at ¶¶ 2, 53.)  Defendant Atlas is Riekes Corp.'s Executive Vice President, and Defendant Riekes is Riekes Corp.'s President.  (Doc. # 1 at ¶¶ 4, 5.)

Plaintiff alleges that Defendant Richey coerced her into having sex with him on March 6, 2014, during her first week of training in Nebraska.  (Doc. # 1 at ¶ 2.)  Plaintiff also alleges that Defendant Richey sexually harassed her during business trips in Illinois and Texas.  (Doc. # 1 at 17-20.)  Plaintiff states that she lodged a sexual harassment claim against Defendant Richey with Defendants Atlas and Riekes, and Defendants Atlas and Riekes retaliated against her by terminating her employment. (Doc. # 1 at ¶ 4.)

## II.      ANALYSIS

### A.      Defendant Robert Richey's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. # 18) and Defendants Carl Riekes and Brett Atlas's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. # 20)

All three individual defendants filed motions to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  To survive a motion to

dismiss for lack of personal jurisdiction where there has been no evidentiary hearing, a plaintiff must make a prima facie showing that the court can exercise personal jurisdiction over the defendant. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). The plaintiff "has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading." *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989). The allegations in the complaint are taken as true to the extent that they are uncontroverted, and all factual disputes are resolved in the plaintiff's favor. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). However, only well-pled facts, as opposed to conclusory allegations, are accepted as true. *Id.*

A federal district court may exercise personal jurisdiction over a defendant who is "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Because Colorado's long-arm statute "confers the maximum jurisdiction permissible consistent with the Due Process Clause [of the Fourteenth Amendment to the United States Constitution]," a personal jurisdiction analysis under Colorado's long-arm statue is analytically identical to a due process analysis under the Fourteenth Amendment. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).

Under the Due Process Clause, a court may exercise personal jurisdiction over a nonresident defendant "so long as there exist 'minimum contacts' between the defendant and the forum State." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S.

286, 291 (1980) (quotation omitted).  A plaintiff can satisfy the minimum contacts standard by demonstrating that the court can exercise either specific personal jurisdiction or general personal jurisdiction over the defendant.  *OMI Holdings*, 149 F.3d at 1090-91.  If a defendant is subject to specific personal jurisdiction, the asserted cause(s) of action must arise from the specific contacts with the forum that gave rise to jurisdiction; whereas, if a defendant is subject to general personal jurisdiction, the asserted cause(s) of action may be unrelated to the defendant's contacts with the forum.  4A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1069 (4th ed. 2015).

A nonresident defendant may be subject to specific personal jurisdiction if he "'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citations omitted).  Thus, where a nonresident defendant is alleged to have committed a tortious act outside the forum state but that act has effects within the forum state, specific personal jurisdiction will be proper only if the nonresident defendant expressly aimed his or her intentional tortious conduct at the forum state and he or she knew that the brunt of the injury would be felt in the forum state.  *Dudnikov*, 514 F.3d at 1072.

With regard to general personal jurisdiction over an individual defendant, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011).  In contrast, a corporate defendant may be subject to general personal jurisdiction if it has

engaged in "continuous and systematic general business contacts" with the forum. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). Although neither the United States Supreme Court nor the Tenth Circuit has definitively answered whether the "continuous and systematic contacts" analysis can be applied to individual defendants, the Supreme Court has strongly implied that it cannot and that domicile is the primary basis for a court's exercise of general personal jurisdiction over an individual defendant. *See Burnham v. Superior Court of Cal.*, 495 U.S. 604, 610 n.1 (1990) ("It may be that whatever special rule exists permitting 'continuous and systematic' contacts . . . to support jurisdiction with respect to matters unrelated to activity in the forum applies *only* to corporations, which have never fitted comfortably in a jurisdictional regime based upon de facto power over the defendant's person.") (internal quotes and citations omitted). In situations in which the "continuous and systematic contacts" test does apply, the plaintiff must show that the defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 131 S. Ct. at 2851 (2011).

If a court finds that it can exercise either specific or general personal jurisdiction over the defendant, that court must then determine "whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476. When determining whether the exercise of jurisdiction would comport with fair play and substantial justice, a court considers the following factors: (1) the burden on the defendant; (2) the forum state's interests in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effectual relief; (4) the interstate judicial system's

interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental social policies.  *See, e.g.*, *OMI Holdings*, 149 F.3d at 1095.

In support of his motion to dismiss, Defendant Richey—a resident and citizen of Minnesota—provides an affidavit with the following information.  He has never owned property in Colorado and has never owned any interest in a Colorado company.  (Doc. 18-1 at ¶ 1.)  He made only four business trips to Colorado in 2013 and 2014, spending a total of only 11 days in the state.  (Doc. # 18-1 at ¶¶ 2-3.)  The trip in 2013 was to conduct a job interview in Denver for his employer prior to Riekes Corp. (Doc. # 18-1 at ¶ 2.a), and the three trips in 2014 were "to make sales calls" in the Denver area (Doc. # 18-1 at ¶ 2.b).  Defendant Richey asserts that "Plaintiff's lawsuit does not relate to any of those specific contacts with Colorado."  (Doc. # 18 at 1.)  Defendant Richey also asserts that "all of the conduct upon which Plaintiff bases her complaint against Richey, and the other Defendants, occurred in Illinois, Nebraska, or Texas," and that "[t]he only contact Colorado has to this case is that the Plaintiff moved to Colorado after the events giving rise to this lawsuit occurred and she wishes to proceed in her home state."  (Doc. # 18 at 2.)

In response to Defendant Richey's motion, Plaintiff argues that the Court can exercise both specific and general personal jurisdiction over Defendant Richey and that exercising either form of jurisdiction would be consistent with traditional notions of fair play and substantial justice.  Plaintiff argues that Defendant Richey's contact with her was enough to establish minimum contacts because she is a resident of Colorado.

(Doc. # 22 at 4-7.)  Plaintiff sets forth two theories.  First, she argues that Defendant

Richey's tortious conduct toward her in Nebraska and Illinois was enough to establish

minimum contacts with Colorado because, after the alleged incidents, she suffered

emotional distress as a result of those contacts at her home in Colorado.  (Doc. # 22 at

6.)  Second, Plaintiff argues that Defendant Richey established sufficient minimum

contacts with Colorado when he took part in the hiring of Plaintiff, then a Colorado

resident.  (Doc. # 22 at 8.)

     In support of their joint motion to dismiss for lack of personal jurisdiction,

Defendants Riekes and Atlas each submit an affidavit with the following information.

Defendant Riekes has his domicile in Nebraska, and he owns no property in Colorado.

(Doc. # 20-1 at ¶¶ 3-4.)  Only once in the prior seven years has Defendant Riekes

conducted any business in Colorado, and that was in September 2015 to make "a brief

call on a potential customer."  (Doc. # 20-1 at ¶ 5.)  Defendant Riekes occasionally

vacations in Colorado, and those vacations last approximately one week.  (Doc. # 20-1

at ¶ 6.)  Defendant Riekes first met Plaintiff when she interviewed with him in Nebraska

in 2014.  (Doc. # 20-1 at ¶ 8.)  As president of Riekes Corp., Defendant Riekes

"monitored her performance while she was working and residing in Texas," and he

approved her termination in August 2014, while he was in Nebraska.  (Doc. # 20-1 at ¶

8.)

     Defendant Atlas states that he also has his domicile in Nebraska, and he does

not own property in Colorado.  (Doc. # 20-2 at ¶¶ 3-4.)  Only twice in the prior seven

years has Defendant Atlas been in Colorado to conduct business, both times to see

potential customers.  (Doc. # 20-2 at ¶ 5.)  Defendant Atlas occasionally vacations in

Colorado, each vacation lasting approximately ten days.  (Doc. # 20-2 at ¶ 6.)

Defendant Atlas first met Plaintiff during her job interview in Texas in January 2014,

which he conducted with Defendant Richey.  (Doc. # 20-2 at ¶ 8.)

     In response to Defendants Riekes and Atlas's motion to dismiss, Plaintiff

presents two theories as to why the Court has specific personal jurisdiction over them:

(1) Defendants Riekes and Atlas "entered into a business transaction with Plaintiff, a

Colorado resident, which arose into [sic] Plaintiff's causes of action against them"; and

(2) Defendants Riekes and Atlas "direct[ed] tortious conduct to Plaintiff, a Colorado

resident."  (Doc. # 23.)

     To begin, Plaintiff does not dispute that none of the individual defendants are

domiciled in Colorado.  Thus, the individual defendants are not subject to general

personal jurisdiction in Colorado on the basis of domicile.  *See, e.g.*, *Goodyear*, 131 S.

Ct. at 2853 ("[T]he paradigm forum for the exercise of general jurisdiction is the

individual's domicile.").  In addition, assuming for the sake of argument that the

"continuous and systematic contacts" test applies to individuals, the Court finds that

none of the individual defendants have engaged in continuous and systemic general

business contacts with Colorado such that they are rendered "essentially at home" in

Colorado.  Each individual defendant has sporadically made a limited number of

business trips to Colorado over the past several years.  These business trips are neither

continuous nor systematic.

With regard to specific personal jurisdiction, Colorado's long-arm statute provides, in part, that an out-of-state individual is subject to the jurisdiction of Colorado courts "concerning any cause of action arising from . . . [t]he commission of a tortious act within the state."  Colo. Rev. Stat. § 13-1-124(1)(b).  Plaintiff argues that "tortious conduct that is committed outside the State of Colorado, but that causes injury to a resident within the State of Colorado, is sufficient to warrant personal jurisdiction over a nonresident defendant pursuant to the Colorado long-arm statute."  (Doc. # 22 at 4-5.) In support of this assertion, Plaintiff cites *D & D Fuller CATV Construction, Inc. v. Pace*, 780 P.2d 520 (Colo. 1989), and *Classic Auto Sales, Inc. v. Schocket*, 832 P.2d 233 (Colo. 1992).

In *Pace*, the Colorado Supreme Court confirmed that "tortious conduct in a foreign state which causes injury in Colorado may be deemed to be an act committed in Colorado so as to satisfy the long-arm statute."  *Pace*, 780 P.2d at 524.  The facts underlying *Pace* involved a Colorado resident mother who sued nonresident paternal grandparents for allegedly conspiring with her ex-husband to interfere with the mother's parent-child relationship in Colorado.  *Id.* at 521.  In finding that Colorado courts could assert jurisdiction over the nonresident paternal grandparents, the Colorado Supreme Court stated:

> The acts allegedly committed by the [nonresident grandparents] were directed at interfering with [the child's] relationship with his mother, avoiding the dictates of the Colorado custody order, aiding in concealing [the child] from his legal custodian, and preventing his return to Colorado. Thus, Colorado was the focal point of both the [nonresident grandparents'] actions and the effects of those actions.

*Id*. at 525.

In *Schocket*, the Colorado resident plaintiff sued an out-of-state defendant for alleged misrepresentations in connection with the sale of a car.  *Schocket*, 832 P.2d at 234-35.  The Colorado Supreme Court held that personal jurisdiction over the defendant was proper because some of the alleged misrepresentations "were specifically directed into Colorado in the course of telephone conversations between [the defendant], in Omaha, and [the plaintiff], in Colorado."  *Id*. at 236.  The court found that "[a]lthough the defendants did not leave Nebraska in the course of directing allegedly false advertising material and telephonic communications to Colorado, the misrepresentations were not complete until received by [the plaintiff] in Colorado."  *Id*.  The court concluded that "this was sufficient to constitute tortious acts within this state within the meaning of section 13-1-124(1)(b)."  *Id*.

*Pace* and *Schocket* both are distinguishable from this case in that both involved defendants whose actions were purposefully directed at Colorado.  *See, e.g.*, *Pace*, 780 P.2d at 525 (stating that "Colorado was the focal point of . . . the [nonresident grandparents'] actions"); *Schocket*, 832 P.2d at 236 (stating that the alleged misrepresentations "were specifically directed into Colorado").  In the present matter, none of the alleged actions of the individual defendants were "specifically directed into Colorado" and Colorado was not the "focal point" of the alleged actions.  Nor can it be said that any of the individual defendants' alleged actions were "expressly aimed" at Colorado.  *See, e.g.*, *Dudnikov*, 514 F.3d at 1072 (setting forth the elements of the "purposeful direction test" established by the United States Supreme Court in *Calder v.*

*Jones*, 465 U.S. 783 (1984)).  Thus, neither *Pace* nor *Schocket* support this Court's exercise of personal jurisdiction over any of the individual defendants pursuant to section 13-1-124(1)(b) of Colorado's long-arm statute.

Although not binding, the Court has identified two district court cases with factual scenarios similar to the case at bar and in which the court concluded that personal jurisdiction over the defendant would be improper.  In *Rosenberg v. Deutsche Bank AG*, Case No. 11-cv-02200, 2012 WL 1963356 (D. Colo. May 22, 2012), *adopted at* 2012 WL 3744361 (D. Colo. Aug. 28, 2012), the plaintiff sued her former employer alleging unlawful sex discrimination under Title VII.  *Id*. at *2.  The defendants were not domiciled in Colorado and the alleged discrimination occurred while plaintiff was working in New Jersey.  *Id*. at *1.  Following the occurrence of the alleged discrimination, the plaintiff relocated to Colorado.  *Id*.  The court found that it lacked personal jurisdiction over the defendants because the plaintiff's "unilateral decision to relocate to Colorado cannot serve as the basis for specific jurisdiction over [the defendants]."  *Id*. at *5.  The court further stated, "Where [the defendants'] contacts with the forum were driven by [the plaintiff's] choice of residence, [the defendants] did not purposefully avail themselves of the privilege of conducting business in Colorado."  *Id*.

In *Wood v. Northwest Airlines, Inc.*, Case No. 09-cv-00481, 2010 WL 2485946 (D. Haw. June 16, 2010), the plaintiff alleged sexual harassment and retaliation in violation of state law against her employer and co-worker.  *Id*. at *1.  The plaintiff—a flight attendant—alleged that the captain of the airplane harassed her while on a flight from Guam to Japan.  *Id*.  Although the alleged harassment occurred in Guam, the

plaintiff "attempt[ed] to establish jurisdiction by arguing that she felt the consequences of those acts in Hawai'i." *Id*. at *5.  The plaintiff asserted that, "after the event, she was unable to work for twenty-eight months, suffered from post-traumatic stress disorder, loss of sleep, anxiety, nightmares, depression, and disruption of her marriage." *Id*.  The court rejected this argument stating that the plaintiff "conflat[ed] the consequences of the injury with the actual injury itself" and that, "[w]hen evaluating personal jurisdiction, the actual injury should be distinguished from its consequences such as pain and suffering." *Id*.  The court further stated that, "[u]nder [the plaintiff's] view, she could have moved to Minnesota, suffered the effects of the alleged incident there, and thus have personal jurisdiction over [the defendant] in Minnesota." *Id*.

This Court finds persuasive the reasoning of the courts in *Rosenberg* and *Wood*. The fact that Plaintiff allegedly "suffered and continues to suffer from extreme emotional distress" in Colorado due to the alleged misconduct that occurred in Nebraska, Texas, and Illinois does not establish that any of the individual defendants committed a tortious act in Colorado, as required by Colorado's long-arm statute.  Plaintiff's choice of residence in Colorado cannot serve as the basis for the Court's exercise of personal jurisdiction over any of the individual defendants.  Similar to the plaintiff in *Wood*, Plaintiff conflates the alleged consequences of her injury with the alleged injury itself.  If the Court were to accept Plaintiff's argument, the individual defendants would be subject to personal jurisdiction in any state to which Plaintiff happens to relocate.  Such a result surely would not comport with "traditional notions of fair play and substantial

justice."  *Dudnikov*, 514 F.3d at 1080 (stating that one of the factors considered when assessing "fair play and substantial justice" is "the burden on the defendant").

The Court also rejects Plaintiff's argument that the individual defendants' "business transaction" with her, as a Colorado resident, created sufficient minimum contacts.  In support of this argument, Plaintiff cites the Colorado long-arm statute, which provides that an out-of-state defendant is subject to the jurisdiction of Colorado courts "concerning any cause of action arising from . . . [t]he transaction of any business within this state."  Colo. Rev. Stat. § 13-1-124(1)(a).  Plaintiff argues that the individual defendants' hiring of Plaintiff subjects them to jurisdiction in Colorado.  Plaintiff does not cite any case law in support of this argument.[1]

In her complaint, Plaintiff sets forth the following facts with regard to her hiring. Plaintiff learned of the position at Riekes Corp. through a job recruiter, whom she had approached in January 2014.  (Doc. # 1 at ¶ 33.)  Plaintiff was aware that the job would require her to move to Texas.  (Doc. # 1 at ¶ 35.)  Plaintiff traveled to Dallas, Texas for an in-person job interview with Defendants Richey and Atlas.  (Doc. # 1 at ¶ 37.) Plaintiff then made a separate trip Omaha, Nebraska for an in-person job interview with Defendant Riekes.  (Doc. # 1 at ¶ 43.)  On February 1, 2014, Plaintiff "received an offer

---

[1] The Court notes that, although not addressed by the parties, Plaintiff's argument implicates the fiduciary shield doctrine, which provides that "a nonresident corporate agent generally is not individually subject to a court's jurisdiction based on acts undertaken on behalf of the corporation."  *Newsome v. Gallacher*, 722 F.3d 1257, 1275 (10th Cir. 2013) (quotation marks and citation omitted).  However, because it is unclear whether Colorado courts would recognize the fiduciary shield doctrine, the Court considers all of the individual defendants' alleged contacts with Colorado, even if undertaken on behalf of Riekes Corp.  *See Carskadon v. Diva Int'l, Inc.*, 2014 WL 7403237 (D. Colo. Feb. 26, 2014), *adopted at* 2014 WL 7403233 (D. Colo. Dec. 29, 2014).

letter via email from Defendant Richey for the position of Regional Sales Manager at

Riekes Corp." (Doc. # 1 at ¶ 47.) On February 15, 2014, Plaintiff was mailed an

employment agreement, which she signed and returned to Riekes Corp. (Doc. # 1 at ¶

48.)

"[A]n individual's contract with an out-of-state party *alone*" cannot "automatically

establish sufficient minimum contacts." *Burger King*, 471 U.S. at 478; *see also SGI Air*

*Holdings LLC v. Novartis Int'l, AG*, 192 F. Supp. 2d 1195, 1202 (D. Colo. 2002) ("[A]

party does not submit itself to personal jurisdiction in a distant forum simply by entering

into a contract with a party that resides in that forum."); *New Frontier Media, Inc. v.*

*Freeman*, 85 P.3d 611, 614 (Colo. App. 2003) ("When the only alleged basis for

jurisdiction is a contract between a resident plaintiff and a nonresident defendant, the

necessary minimum contacts are not present to confer personal jurisdiction over such a

defendant.").

However, the Supreme Court in *Burger King* emphasized "the need for a highly

realistic approach" to the personal jurisdiction analysis, which "recognizes that a

contract is ordinarily but an intermediate step serving to tie up prior business

negotiations with future consequences which themselves are the real object of the

business transaction." *Burger King*, 471 U.S. at 479 (internal quotation marks and

citation omitted). Thus, a court must also consider "prior negotiations and contemplated

future consequences, along with the terms of the contract and the parties' actual course

of dealing" when determining whether "the defendant purposefully established minimum

contacts with the forum." *Id*.

14

In the present case, the individual defendants' alleged actions with regard to Plaintiff's hiring are insufficient to establish that they had sufficient minimum contacts with Colorado.  All of the job interviews took place outside of Colorado and all performance under the employment contract took place outside of Colorado.  The only way in which Colorado is at all connected to Plaintiff's employment is that Plaintiff was a Colorado resident at the time she entered into the contract.  Therefore, the Court finds that Plaintiff has not demonstrated that the individual defendants engaged in minimum contacts with Colorado.

**B.      Defendant Riekes Corp.'s Motion to Transfer Venue to the United States District Court for the District of Nebraska (Doc. # 21)**

In response to Plaintiff's complaint, Defendant Riekes Corp. filed a motion to transfer venue under 28 U.S.C. § 1404(a).  (Doc. # 21.)  Pursuant to the statute, "a district court may transfer any civil action to any district or division where it might have been brought," if such transfer would serve "the convenience of parties and witnesses" or otherwise serve "the interest of justice."  28 U.S.C. § 1404(a).  "[T]he purpose of [28 U.S.C. § 1404(a)] is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. Barge F.B.L.-585*, 364 U.S. 19, 26 (1960)).

The party seeking a transfer "bears the burden of establishing that the existing forum is inconvenient."  *Chrysler Credit Corp. v. County Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991).  Section 1404(a) gives the district court the discretion to "adjudicate motions for transfer according to an 'individualized, case-by-case

consideration of convenience and fairness.'" *Id*. at 1516 (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).  In making this determination, the district court should consider

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)).

Riekes Corp. argues that there is "no question that this action could have been brought in the federal courts of Nebraska." (Doc. # 21 at 2.)  In support of this argument, Riekes Corp. cites 28 U.S.C. § 1391(b)(2), which provides that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  Plaintiff does not dispute this contention. (*See* Doc. # 24.)  The Court agrees that Plaintiff's claims against Riekes Corp. could have initially been brought in the District of Nebraska because a substantial part of Riekes Corp.'s alleged conduct occurred in Nebraska.  For example, Riekes Corp. is headquartered in Omaha and that is where both the investigation into Plaintiff's sexual harassment allegations and the decision to terminate Plaintiff's employment occurred.

In addition, the factors listed in *Chrysler Credit Corp.* weigh in favor of granting Riekes Corp.'s motion to transfer.  The first factor is the plaintiff's choice of forum.

*Chrysler Credit Corp.*, 928 F.2d at 1516.  While there is a presumption in favor of a plaintiff's chosen forum, "little weight" is afforded to that choice "where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum." *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168 (10th Cir. 2010) (quotation marks and citation omitted).  Plaintiff "concedes that most of the events that instigated the causes of action Plaintiff has brought forth occurred in states other than Colorado."  (Doc. # 24 at 5.)  Thus, the Court gives little weight to Plaintiff's chosen forum.

Courts also should consider the accessibility of witnesses and other sources of proof in determining whether to grant a motion to transfer venue.  *Chrysler Credit Corp.*, 928 F.2d at 1516.  In fact, "[t]he convenience of witnesses is the most important factor in deciding a motion under § 1404(a)." *Employers Mut. Cas. Co.*, 618 F.3d at 1169 (quotation marks and citation omitted).  Riekes Corp. asserts that the majority of the potential witnesses reside in Nebraska.  (Doc. # 21 at 5-7.)  Notably, only one potential witness identified by either party, Aaron Caffee, resides in Colorado.  (*See* Doc. # 21 at 5-7 and Doc. # 24 at 8-9.)  Save for Mr. Caffee and Lisa Powers (who resides in Illinois), *all* of the relevant non-party witnesses identified by the parties live in Nebraska.  Therefore, most of the potential witnesses in this matter are outside the subpoena power of this Court but within the subpoena power of the district court in Nebraska.  *See* Fed. R. Civ. P. 45(c)(1).  In addition, for nearly all of the witnesses, the most convenient forum would be the District of Nebraska.

Riekes Corp. also contends that all the relevant documents are located in Nebraska.  (Doc # 21 at 4.)  This argument is less compelling because Riekes Corp. does not indicate whether these documents are hard copy records that would need to be physically transported or electronically stored information that could be sent digitally. (Doc. # 21 at 4.)  The most Riekes Corp. says is that the records are "located" and "more accessible" in Omaha.  (Doc # 35 at 4-5.)  Plaintiff correctly points out that modern technology makes it easy to transport electronically stored information.  (Doc. # 24 at 6.)  Because Riekes Corp. does not state whether the documents are hard copy or electronic, the Court is not persuaded by its argument that transportation of the documents would be burdensome.

The Court is, however, persuaded by Riekes Corp.'s argument that the cost of making necessary proof would be much greater in Colorado.  Only Plaintiff and one potential witness reside in Colorado.  Factual inquiries regarding the alleged harassment may require witnesses or records from the hotel where the alleged harassment occurred, and, by Plaintiff's own admission, most of the events giving rise to her causes of action occurred outside of Colorado.  (Doc. # 24 at 5.)  Plaintiff, citing *Employers*, argues that the movant is required to demonstrate the actual costs associated with proceeding in the choice forum.  (Doc. # 24 at 10.)  This argument overstates the *Employers* court's holding.  *See Employers Mut. Cas. Co.*, 618 F.3d at 1169.  It would be unrealistic for Riekes Corp. to put together an accounting of the exact cost of transporting each witness and document to Colorado.  Moreover, it is clear that

these extra costs would not exist if venue remained in Colorado because there are few witnesses and little evidence already located here.

Another factor that weighs in favor of transfer is the advantage of having a local court determine questions of local law. Generally, "courts prefer the action to be adjudicated by a court sitting in the state that provides the governing substantive law." *Employers Mut. Cas. Co.*, 618 F.3d at 1169. Plaintiff's claims involve federal law, Nebraska state law, and Texas state law. (*See* Doc. # 1.) Notably, none of Plaintiff's claims implicate Colorado state law. While the Court is obviously well-suited to address questions of federal law, the district court in Nebraska is equally well-suited. Also, it is clear that the district court in Nebraska is in a better position than this Court to address questions of Nebraska law. This Court and the District of Nebraska are in an equal position when it comes to Texas law. Thus, this factor weighs in favor of transferring the matter to the District of Nebraska.

Finally, Plaintiff argues that Riekes Corp.'s motion to transfer should be denied because Riekes Corp. did not timely file its stipulated motion for an extension of time to file an answer or otherwise respond to Plaintiff's complaint. (Doc. # 24 at 13.) Plaintiff's argument is unavailing for two reasons. First, Plaintiff admits that she did not object to Riekes Corp.'s request for an extension of time to answer or otherwise response to Plaintiff's complaint. (Doc. # 24 at 13.) Thus, Plaintiff cannot show prejudice. Second, Plaintiff fails to show why the timing of the filing of the stipulated motion for an extension of time to answer or otherwise respond to Plaintiff's complaint would prohibit Riekes Corp. from filing its motion to transfer. As the Tenth Circuit has stated, "[a]n action may

be transferred under § 1404(a) at any time during the pendency of the case." *Chrysler Credit Corp.*, 928 F.2d at 1516.  Thus, the Court will not deny Riekes Corp.'s motion on this basis.

### III.   <u>CONCLUSION</u>

For the foregoing reasons, it is hereby

ORDERED that Defendant Robert Richey's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. # 18) is GRANTED; it is

FURTHER ORDERED that Defendants Carl Riekes and Brett Atlas's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. # 20) is GRANTED; it is

FURTHER ORDERED that Defendant Riekes Corp.'s Motion to Transfer Venue to the United States District Court for the District of Nebraska (Doc. # 21) is GRANTED; and it is

FURTHER ORDERED that this action be transferred to the District of Nebraska for further adjudication.

DATED: February 24, 2016                BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge